UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MILDRED D. MARTINEZ,<br>Defendant | Crim. No. 13-CR-40030-TSH |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to sentence Ms. Martinez to 27 months of imprisonment, 24 months of supervised release to follow, restitution of $226,349.11 to the Internal Revenue Service and the United States Treasury, forfeiture to the extent charged in the information or agreed to in the plea agreement, and a $100 mandatory special assessment.

The most fruitful way to discuss Ms. Martinez is by way of comparison to the defendants in related cases, Danielle Pazi and Gregory Guertin.

I.  FACTS

All three defendants worked at Citizens Bank. Ms. Martinez's position was higher than Ms. Pazi's but lower than Mr. Guertin's.

Ms. Martinez interacted minimally with Mr. Guertin and Ms. Pazi in the context of the stolen identity refund fraud scheme. She had one source of checks in common with them, but Ms. Pazi and Mr. Guertin had an additional source, with whom she did not work. Ms. Martinez cashed a couple of checks for Ms. Pazi, but only as a favor to her. Ms. Martinez, like Mr. Guertin but unlike Ms. Pazi, did not recruit anyone to join the scheme.

By some measures — the extent of her participation in terms of the duration, number of checks, and amount of money — Ms. Martinez's culpability is in between Mr. Guertin's and Ms.

1

Pazi's. Mr. Guertin participated for barely a month and cashed or deposited 20 Treasury checks worth about $137,672.86. Ms. Pazi participated for about 14 months and was responsible for about 162 checks worth over $1.1 million. Ms. Martinez participated for about six months, and cashed or deposited about 31 checks worth about $226,349.11.

In two aspects, Ms. Martinez is less culpable than both Mr. Guertin and Ms. Pazi. First, Ms. Martinez made less per check than did Mr. Guertin and Ms. Pazi: from $200 to $400 per check, as compared to about $600 per check for both of them. (For each check that Mr. Guertin handled, Ms. Pazi received about $200, on top of his $600.) Second, Ms. Martinez ceased participating in the scheme on her own (after her bank branch closed and she left Citizens Bank), whereas Mr. Guertin and Ms. Pazi continued until they were caught.

The United States will move for a downward departure for Ms. Martinez, just as it did for Mr. Guertin and Ms. Pazi. It will, however, seek a smaller departure: only 10%, versus 30% for Mr. Guertin and 45% for Ms. Pazi. The United States will explain why at the sentencing hearing. At this point, however, it is worth noting that the difference is not due to any failure of character, effort, or deed on Ms. Martinez's part.

## II. SENTENCING GUIDELINE CALCULATIONS

The parties and Probation have calculated Ms. Martinez's sentencing guidelines to yield a total adjusted offense level of 19 (after accounting for acceptance of responsibility), which, with criminal history category I, yields a sentencing range of 30 to 37 months of imprisonment.

Ms. Martinez's offense level and sentencing range are between those for Mr. Guertin and Ms. Pazi (before accounting for their downward departures).

**III.     SENTENCING RECOMMENDATION**

The low end of Ms. Martinez's sentencing guideline range is 30 months.  This would normally be an appropriate sentence for her crime.  The reasons for a significant sentence of imprisonment here are the same reasons that the government outlined in Ms. Pazi's and Mr. Guertin's cases:  the crime consisted of a significant fraud; Ms. Martinez participated in it numerous times over a half-year or so; a portion of the profits went into Ms. Martinez's pockets; she committed the crime by taking advantage of her position of trust as a bank supervisor; and imprisonment is appropriate for purposes of deterring the general public, reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment.

However, the United States concedes that, as with Ms. Pazi and Mr. Guertin, the United States is not concerned with specific deterrence; Ms. Martinez is unlikely to reoffend.

As mentioned above, at the hearing the United States will request a 10% downward departure.  Its ultimate recommendation will therefore be 27 months of imprisonment.

Although this sentencing recommendation is lower than the government's 31-month recommendation for Ms. Pazi, it is still higher than the 11-month sentence that Ms. Pazi received.  Why is the United States recommending a higher sentence for Ms. Martinez when Ms. Pazi is more culpable than her?  Because the extraordinary mercy shown Ms. Pazi was intended to avoid her deportation and possible permanent separation from her young children.  Ms. Martinez does not face deportation and therefore does not require that same mercy.  Ms. Pazi also deserved a greater downward departure.

That said, the United States understands that 18 U.S.C. § 3553(a)(6) (requiring the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct") will play a part in Mr. Martinez's ultimate sentence.

                                                    Respectfully submitted,

                                                    CARMEN M. ORTIZ
United States Attorney

*/s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that this document is being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney

Date: December 15, 2014

4